IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30528
Summary Calendar
_____


ROBERT P. THOMPSON,

                                        Plaintiff-Appellant,

versus

CADDO PARISH COMMISSION; ET AL,

                                        Defendants,

PARISH OF CADDO,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 97-CV-0467
_____

December 17, 1998

Before JOLLY, SMITH, and Wiener, Circuit Judges.

PER CURIAM:[*]

In this employment discrimination case grounded in an alleged
violation of the Americans With Disabilities Act ("ADA"),[1]
Plaintiff-Appellant Robert P. Thompson asks us to reverse the
judgment of the district court, rendered on the basis of the
unanimous jury verdict against Thompson, in favor of Defendant-

_____

        [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

        [1]     42 U.S.C. § 12101 et seq.

Appellee the Parish of Caddo ("Caddo Parish"). In his appellate brief, Thompson concedes that, of the three employment discrimination claims he asserted in the district court, only one — failure of Caddo Parish to make a reasonable accommodation for his disability — has any viability on appeal. He further acknowledges that even as to this one remaining claim, his burden is a heavy one: He must obtain reversal of the adverse judgment by convincing us either that (1) no reasonable jury could have reached this verdict on the basis of the record evidence; or (2) the district court abused its discretion in admitting certain evidence and that so doing constituted reversible error. Our review of the record on appeal, including the entire transcript, the briefs of the parties, and the applicable law, satisfies us that Thompson cannot bear his burden on either score, so we affirm.

I.

FACTS AND PROCEEDINGS

Thompson is a wheelchair-bound polio victim who worked for Caddo Parish for approximately 17 years. Immediately prior to assuming the post he was filling when his employment terminated, Thompson was a dispatcher in the Caddo Parish Highway Department, a position he had held and performed with distinction for years. As a result of an extensive reorganization by Caddo Parish, Thompson's Highway Department dispatcher's position and five other similar positions were eliminated. Thompson was neither laid off nor demoted, however; rather, he was reassigned to Caddo Parish's

2

Animal and Mosquito Control Department — as a dispatcher, and at no reduction in or loss of pay or benefits.

The evidence is undisputed that, at his new job location, Thompson was required to use a time clock located in the kennel area of the facility; that animals — at least dogs, including Rottweilers — were allowed to roam the kennel area unleashed; that, after Thompson had worked in his new position for less than three weeks, an incident is alleged to have occurred in which an unleashed and unsupervised Rottweiler attempted to attack Thompson; and that he was barely able to avoid actual contact by wheeling his chair through a door to safety in the nick of time. Thompson immediately called for and received a conference with his supervisor and the Human Resources ("HR") director of the Parish the next day.

Viewing the evidence and its reasonable inferences in the light most favorable to the jury verdict, as we must, the record supports factual findings that Thompson requested an accommodation, specifically, a return to his old job (which no longer existed); that his supervisor and the HR director countered by proposing an accommodation comprising use of a different time clock and location of his workstation in an area of the building — remote from the kennel area — where unleashed animals would not be present; that Thompson rejected the proposed accommodations out of hand, insisting on a transfer from the Animal and Mosquito Control Department; and that he requested and was granted 10 days annual leave, at the end of which he refused to return to work at the

3

Animal and Mosquito Department under any circumstance, declined a less favorable job elsewhere, and tendered his resignation.

Thompson filed a complaint with the Equal Opportunity Employment Commission ("EEOC"), received a right-to-sue letter, and thereafter filed the instant lawsuit. During the course of the ensuing jury trial Thompson objected to, inter alia, admission of testimony by his supervisor and the Caddo Parish HR director to the effect that, if Thompson had not resigned precipitously but instead had allowed Caddo Parish time to do so, it would have made an adequate accommodation to his disability. The record contains conflicting testimony regarding compliance by Caddo Parish with various notification and posting requirements of the ADA. The jury trial ended in an unanimous verdict against Thompson, from which he timely appealed.

II.

ANALYSIS

A.   Standard of Review

As acknowledged by Thompson, our standard of review of the sufficiency of the evidence to support a jury verdict is quite deferential: "Unless the evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict, the findings of the jury must be upheld."[2] Again, we review the evidence in the light most favorable to the jury verdict and uphold that verdict unless "there is no legally sufficient

---

[2]   Ham Marine, Inc. v. Dresser Ind., 72 F.3d 454, 459 (5th Cir. 1995).

4

evidentiary basis for a reasonable jury to find" as the jury did.[3] "Appellate review of evidentiary rulings is confined to determining whether the trial judge abused his discretion."[4]

B.    <u>Sufficiency of the Evidence to Support the Jury Verdict</u>.

The parties stipulated that Thompson is a "Qualified Individual with a Disability" for purposes of the ADA,[5] and that Caddo Parish is a "covered entity" and "employer" under that act. Although there is some quibbling in the appellate briefs as to whether Thompson requested an accommodation, we assume for purposes of this analysis that he did, albeit the accommodation he requested appears to have been limited to reassignment to his old job or at least to a dispatcher's position or equivalent somewhere other than in the Animal and Mosquito Control Department. There is no evidence that Thompson was phobic or otherwise overly concerned about animals prior to the Rottweiler incident; neither is the disability he proffers a new "canine phobia." Rather, Thompson contends that his polio/wheelchair disability makes him more vulnerable than nondisabled employees to animal attack.

The record contains testimony by Thompson's supervisor and the HR director of Caddo Parish that they met with Thompson the day following the alleged dog attack, that they promised accommodations would be made, including use of a time clock by Thompson at a

---

[3]    <u>Hiltgen v. Sumrall</u>, 47 F.3d 695, 700 (5th Cir. 1995) (citing Fed. R. Civ. P. 50(a)(1)).

[4]    <u>Smith v. A.C.& S, Inc</u>., 843 F.2d 854, 857 (5th Cir. 1988).

[5]    42 U.S.C. § 12111(8).

different "dog free" location coupled with assurance that dogs would be required to be leashed at all times throughout the building, and that Caddo Parish would promptly take any other steps reasonably necessary to ensure Thompson's safety on the job. There is no record evidence that Thompson advanced any ADA-related complaints about his new workplace prior to the alleged Rottweiler incident or that his complaints at the meeting the day thereafter implicated any other ADA deficiencies in the physical characteristics of his new workplace; only that he doggedly insisted on a transfer out of the Animal and Mosquito Control Department. The record also confirms that Thompson rejected the proffered accommodations out of hand and, after taking 10 days annual leave, submitted his written resignation.[6]

Keeping in mind that, on appeal, conflicts in testimony (and there are many in the instant record) must be resolved in favor of the jury verdict, our review of the record as a whole convinces us that, given the deference owed to the jury as fact-finder, coupled with the reasonable inferences and the credibility calls that go with the job, a reasonable jury could have reached the verdict that this one reached on the basis of such evidence and inferences. This applies to Caddo Parish's proffering a reasonable accommodation for Thompson's disability as well as complying with various notice and

---

[6] The record also reflects that, as an alternative to the animal prevention accommodations proposed by Caddo Parish, Thompson was offered a lesser job at lesser pay; however, that alternative clearly would not have constituted an adequate accommodation for ADA purposes had it been the only accommodation offered.

6

posting requirements of the ADA —— another contested issue of fact on which the jury could have gone either way.

Likewise, the state of the record is such that the jury could reasonably have concluded that Caddo Parish took no adverse employment action against Thompson —— actual or constructive —— much less one based solely on his disability. Caddo Parish was not required to assign him to a position that was already occupied;[7] neither was it required to create a new position to accommodate Thompson. The fact that Thompson did not like his new work assignment does not make it an adverse employment decision.[8] We conclude that, when properly viewed for purposes of appeal, the evidence as a whole is sufficient to support the jury verdict.

C. Evidentiary Rulings

The district court's decision to admit, over Thompson's objection, the testimony of his supervisor and the HR director of Caddo Parish to the effect that, had Thompson given them a chance, they would have taken action constituting a reasonable accommodation for purposes of the ADA, does not rise to the level of abuse of discretion.[9] Moreover, even if we were to conclude that the district court abused its discretion in admitting this testimony, doing so would not have constituted reversible error.

---

[7] See Still v. Freeport-McMoRan, Inc., 120 F.3d 50 (5th Cir. 1997).

[8] Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997).

[9] See, e.g., Robinson v. Bump, 894 F.2d 758, 762-63, reh. den., 899 F.2d 11 (5th Cir. 1990); Soden v. Freightliner Corp., 714 F.2d 498 (5th Cir. 1983).

First, the testimony regarding the accommodations offered at the meeting on the day following the dog attack is sufficient to support a jury conclusion that Caddo Parish had in fact proposed a reasonable accommodation, so that whatever else the Parish might have done subsequently if given an opportunity is surplusage. Second, the other record evidence obviously credited by the jury is more than sufficient to support its findings, even absent the complained-of testimony. We do not view that testimony as being so prejudicial as to have rendered the jury trial unfair or the verdict unreliable.

## III.

## CONCLUSION

The law does not require perfection in a jury trial; indeed, few if any could ever earn that grade. Here, however, the record confirms that the instant jury trial was conducted free of reversible error and that the stipulated or undisputed evidence, in combination with disputed evidence credited by the jury, is more than sufficient to sustain its verdict. For the foregoing reasons, the judgment of the district court, grounded in the unanimous verdict of the jury, is, in all respects,

AFFIRMED.